UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERRI C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02905-TAB-JPH |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.    Introduction**

Plaintiff Terri C. appeals the Social Security Administration's denial of her application for disability insurance benefits.  Plaintiff argues that the Administrative Law Judge cherry-picked evidence and failed to provide an accurate and logical bridge to support critical findings and conclusions.  Specifically, Plaintiff takes issue with the ALJ's analysis at step three finding Plaintiff's conditions did not meet Listing 1.04 or medically equal a listing and raises various other challenges to the ALJ's decision.  The Court agrees that the challenged decision does not adequately set forth the ALJ's consideration of whether Plaintiff's impairments meet or medically equal Listing 1.04.  In addition, Plaintiff raises other valid concerns in relation to the ALJ's treatment of Plaintiff's subjective symptoms, and the decision lacks a proper analysis to support the ALJ's conclusion that Plaintiff is not disabled in light of the evidence of record.  Therefore, for all these reasons, Plaintiff's request for remand [Filing No. 16] is granted.

**II.     Background**

On March 6, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging her disability began on September 1, 2017. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. Before reaching step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 1, 2017, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: ulcerative colitis, asthma, mild multilevel degenerative disc disease, osteoarthritis, migraines, cervicalgia, moderate to severe left foraminal narrowing, and cervical degenerative disc disease with radiculopathy and stenosis. [Filing No. 14-2, at ECF p. 18.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or series of impairments that medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite her limitations. The ALJ concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [Plaintiff] can lift 50 pounds occasionally and 25 pounds frequently, stand or walk for six hours and sit for six hours per eight-hour workday, with frequent climbing of ramps or stairs, occasional climbing of ladders, ropes, or scaffolds, frequent balancing on level surfaces, frequent stooping, kneeling, crouching, and crawling, with no concentrated exposure to fumes, odors, dusts, and gases, and no concentrated exposure to extreme cold, vibration, or industrial noise.

[Filing No. 14-2, at ECF p. 22.]

At step four, the ALJ concluded that Plaintiff could perform past relevant work as a Shipping-and-Receiving Supervisor.  The ALJ found that this work did not require performance of work-related activities precluded by Plaintiff's RFC as generally performed.  Accordingly, the ALJ concluded that Plaintiff was not disabled.

### III.     Discussion

Plaintiff raises numerous arguments but contends that there are "two critical defects that infect the entire" ALJ decision: (1) the ALJ cherry-picked evidence; and (2) the ALJ failed to provide an accurate and logical bridge from the evidence to the ALJ's conclusions.  [Filing No. 16, at ECF p. 13.]  Thus, Plaintiff argues that remand is necessary.  The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A.  Step Three Listing Analysis

Plaintiff argues that the ALJ erred at step three by failing to analyze relevant, potentially dispositive evidence before concluding that Plaintiff's conditions did not meet or medically equal Listing 1.04 regarding spine disorders. [Filing No. 16, at ECF p.19-24.] Plaintiff describes the ALJ's listing analysis as perfunctory, boilerplate, and inadequate.

To determine whether the ALJ's step three listing analysis was sufficient, the Court need not look much beyond the language in the ALJ's decision. It is immediately obvious that the ALJ's analysis is minimal, at best. In evaluating whether Plaintiff's impairments met Listing 1.04, the ALJ simply recited the requirements of the listing and stated:

> Listing 1.04, *Disorders of the Spine*, is not met because the record does not demonstrate compromise of a nerve root (including the cauda equina) or the spinal cord with additional findings of: (a) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, positive straight-leg raising, or (b) spinal arachnoiditis, or (c) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in the inability to ambulate effectively, as defined in 1.00B2b.

[Filing No. 14-2, at ECF p. 21 (internal record citations omitted).]

When considering whether a claimant's medical impairment meets or equals a listing, the ALJ must discuss the listing by name and offer more than a perfunctory analysis. *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020). *See also Robert S. v. Kijakazi,* No. 1:20-cv-2235-MG-RLY, 2021 WL 5979361, at *6 (S.D. Ind. Dec. 16, 2021) ("While the ALJ is not held to a high bar of articulation at Step Three, some level of analysis is required. And although the Court must give deference to the ALJ's factual determinations underlying her listing assessment, the ALJ must consider all the evidence, particularly evidence contrary to the determination. To demonstrate that the ALJ's listing conclusion was not supported by substantial evidence, the claimant must

identify record evidence that was misstated or ignored, and that could support a finding that claimant met or equaled the criteria.").

Plaintiff cites to a vast amount of evidence in the record that she argues shows that she had all the abnormal signs, symptoms, and laboratory findings to meet the requirements of Listing 1.04(A), including:

- Multiple disorders of the spine (i.e., cervicalgia, cervical radiculopathy, cervical stenosis, cervical disc degeneration, and chronic osteoarthritis of the neck) resulting in compromise of a nerve root, established by diagnostic testing, which showed moderate left uncovertebral joint hypertrophy and moderate narrowing of the left neural foramen at C4-5 and left posterior and foraminal disc protrusion, mildly indenting and clockwise rotating the cord, mild narrowing of the central canal, moderate left uncovertebral joint hypertrophy, and moderate to severe narrowing of the left neural foramen.
- Neuroanatomical distribution of pain, indicated in the record by: (1) exams showing tenderness, pain, and/or spasms from mid-2014 to late-2019; (2) Plaintiff's diagnosis of cervical radiculopathy, also documented in exams; and (3) an exam that showed a positive Spurling's test, which is used to assess cervical root compression.
- Exams showed reduced range of motion in Plaintiff's cervical spine/neck, as recently as February 2019.
- Evidence of motor loss accompanied by sensory or reflex loss, including exams indicating decreased muscle strength and numbness and tingling from the neck to the left arm and hand, and Plaintiff's statements regarding pain in the neck with tingling, burning, numbness, or neuropathy in the left shoulder, arm, and hand.

[Filing No. 16, at ECF p. 21-22.]

In response, the Commissioner claims that Plaintiff's arguments amount to "nothing more than a call to reweigh the evidence in a manner more in her favor[.]"  [Filing No. 17, at ECF p. 15.]  This is inaccurate.  The Commissioner's rebuttal argument ignores Plaintiff's main argument, which is not that the ALJ improperly considered the record evidence, but that the ALJ failed to consider significant evidence entirely—or at least failed to explain why this evidence did not support the requirements of the listing or otherwise build a logical bridge between the evidence and the ALJ's conclusion.

The Commissioner also contends that Plaintiff's arguments fail to demonstrate any extreme limitation in her ability to walk or any inability to ambulate effectively, which the Commissioner claims is one of the requirements of Listing 1.04.  *See, e.g., Ernie G. v. Kijakazi*, No: 1:20-cv-3288-MJD-RLY, 2022 WL 168348, at *3 (S.D. Ind. Jan 18, 2022) ("Claimant wholly fails to acknowledge the relevant definition of 'inability to ambulate effectively. . . . The only evidence pointed to by Claimant demonstrates that he had a limp and decreased strength and range of motion; that evidence is clearly insufficient to demonstrate that Claimant had an 'inability to ambulate effectively' as that term was used in the Listing.").  However, the requirement to ambulate is part of Listing 1.04(C).  As this Court has previously noted, "[t]he use of "or" between subsections (A), (B), and (C) means that fulfilling all of the elements of one of these subsections meets Listing 1.04; it is not necessary to prove all elements of all of the subsections."  *Shirley S. v. Kijakazi*, No. 1:20-cv-1270-TAB-JPH, 2021 WL 2980398, at *3 (S.D. Ind. July 15, 2021).  Thus, although the ALJ's decision generally refers to all three sections of Listing 1.04, Plaintiff only needed to present evidence that she met one of the three subsections, and her brief is dedicated to arguing that she met Listing 1.04(A), which does not require an inability to ambulate effectively.

Plaintiff also argues that the ALJ failed to properly consider medical equivalence. Even if Plaintiff's conditions did not meet Listing 1.04, Plaintiff contends that the record medical evidence shows medical equivalence to the listing. [Filing No. 16, at ECF p. 22-23.] For instance, Plaintiff took prescription narcotics and nerve pain medications, has received many steroid injections in her neck and back, has undergone physical therapy, chiropractic care, and used a TENS unit. None of these steps resolved her pain. In addition, Plaintiff suffered from several low back conditions established by objective medical imaging, which showed (1) spondylosis and moderately reduced disc height at L3-L4, (2) mild degenerative changes, and (3) mild multilevel disc disease. In addition, lower back exams showed at times (1) tenderness/pain, (2) reduced range of motion, and (3) Oswestry scores indicating mostly "severe" to "crippling" disability. Plaintiff has primary generalized arthritis, and cited to exams showing pain, arthritis, and inflammation in the knees and generalized joint pain, as well as osteoarthritis in both shoulders established by x-ray imaging. Thus, Plaintiff argues that the ALJ's decision fails to provide due consideration of the functional limitations caused by these conditions and symptoms.

In response, the Commissioner contends that the ALJ was not required to consider whether Plaintiff had a combination of impairments that medically equaled a listing because it is the claimant's burden to prove medical equivalence, and the record contained no medical opinion evidence that could show equivalence. [Filing No. 17, at ECF p. 17.] Plaintiff persuasively notes that it is a claimant's burden to produce evidence in support of her claim—which Plaintiff did by showing medical diagnoses, objective findings, clinical abnormalities, longitudinal treatment history, and the combination of her impairments and her subjective symptoms—but she need not prove equivalence. *See, e.g., Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("It

is true that Scott bears the burden of producing evidence of her impairments, but she did produce evidence in the form of her own testimony as well as medical evidence that tremors make it difficult for her to use her hands."  (Internal citation omitted)); *Hartley v. Berryhill*, No. 1:17-cv-1043-TWP-TAB, 2018 WL 2173682, at *5 (S.D. Ind. May 10, 2018) ("The burden is on the claimant at step three.  However, the claimant's burden is merely to produce evidence in support of the claim, not to prove equivalence.").  Moreover, while the ALJ found the opinions of the state agency consultants persuasive, the state agency consultants never considered Listing 1.04.  [Filing No. 14-3, at ECF p. 19, 31.]  Thus, the ALJ's step three determination is wholly unsupported.[1]

Ultimately, the Court takes no position on whether the evidence establishes that Plaintiff satisfies Listing 1.04, or particularly Listing 1.04(A).  As the Commissioner recognizes, this Court cannot re-weigh the evidence or substitute its judgment for that of the ALJ.  *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.").  However, while the Court is fully aware that ALJs are not required to name and discuss every listing in their written decisions, "[i]n considering whether a claimant's condition meets or equals a listed impairment, an ALJ

---

[1] The Commissioner also claims that Plaintiff's argument fails because much of the evidence cited by Plaintiff either pre-dates the relevant period or is before her alleged disability date. [Filing No. 17, at ECF p. 17.]  However, the ALJ must consider this evidence, and failure to do so is error.  *See, e.g., Alexis H. v. Berryhill*, No. 2:17-cv-204-DLP-JMS, 2018 WL 3654799, at *7 (S.D. Ind. Aug. 2, 2018) ("The ALJ does not need to address every piece of evidence in his decision, but he cannot ignore an entire line of evidence that undermines the conclusions he made.  Moreover, the ALJ must consider all of the evidence in the administrative record, regardless of its source.  The Seventh Circuit has indicated that this includes evidence that predates the claimant's alleged onset date." (Internal citations, emphasis, quotation marks, and brackets omitted)).

must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381, F.3d 664, 668 (7th Cir. 2004). *Cf. Wilder v. Kijakazi*, No. 21-1606, __ F.4th __, __, 2022 WL 34780, at *6 (7th Cir. Jan. 4, 2022) ("*Barnett* does not require ALJs to name and discuss every Listing in their written decisions. Such a requirement would be particularly unreasonable where, as here, the claimant does not identify a Listing at the hearing, and her attorney even conceded that she does not meet or equal a Listing."). The ALJ's decision in this case does not adequately analyze Listing 1.04. The ALJ recited the requirements of the Listing but did not analyze those requirements in the context of Plaintiff's impairments or otherwise build a logical bridge from the evidence to the conclusion that Plaintiff's spine impairments do not meet or medically equal Listing 1.04. Thus, remand is proper.

In addition, Plaintiff notes that although the state agency medical consultants found Plaintiff's spine disorder to be severe, they did not consider the condition under any listing, nor did they consider her shoulder issues under Listing 1.02, which the ALJ found applicable. Plaintiff also argues in a footnote that the state agency medical opinions were also "critically outdated" in light of evidence post-dating the consultants' review showing: (1) decreased range of motion with pain in the neck and numbness and tingling in the left arm and hand; (2) cervicalgia with radiculopathy, decreased range of motion when turning the head to the left, increased pain, muscle spasms, and neuropathy from the left shoulder to the fingers; (3) arthritis in the knees and hips, limited range of motion and pain in the neck, and muscle spasms; (4) active headache, cervical spine pain, and upper back pain and neuropathy; and (5) cervical spine pain with radiculopathy, back, leg, and joint pain, and numbness and tingling in the left arm and hand with decreased hand strength and grip. Although the Court takes no position on these additional issues, the ALJ may need to address them on remand.

### B. Subjective Symptom Evaluation

Plaintiff argues that the errors in the ALJ's decision are best reflected in the ALJ's "unsubstantiated symptom analysis." [Filing No. 16, at ECF p. 13.] The regulations describe a two-step process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Filing No. 14-2, at ECF p. 26.] In relation to Plaintiff's daily activities, the ALJ concluded that the evidence demonstrated her limitations were less severe than she alleged. Plaintiff contends that the ALJ relied heavily on Plaintiff's activities of daily living and ignored the qualified way Plaintiff completed most of these activities. As a result, Plaintiff asserts that the ALJ concluded that Plaintiff's activities suggest a higher level of functioning than actually supported by the record and Plaintiff's activities. Plaintiff argues that her activities, which were performed infrequently, with help and with resulting pain, are not a sufficient basis to reject her complaints of pain. [Filing No. 16, at ECF p. 14.]

The ALJ cited to various objective evidence corroborating Plaintiff's complaints of pain, including a March 14, 2014, cervical MRI showing foraminal disc protrusion, indentation and

11

rotation of the spinal cord, mild narrowing of the central canal, moderate joint hypertrophy, and moderate to severe narrowing of the left neural foramen; a December 2014 lumbar MRI showing mild degenerative changes with mild diffuse disc bulge, focal protrusion, facet and ligamentous hypertrophy, and foraminal stenosis at multiple levels; a July 2018 bilateral shoulder x-ray showing mild osteoarthritis of the joints; a July 2018 lumbar x-ray showing mild multilevel degenerative disc disease; and a December 2018 exam showing cervical pain radiating to the left hand with diminished strength on the left, cervical pain radiating to the right shoulder, and numbness and tingling in the left hand. [Filing No. 14-2, at ECF p. 25-26.] As Plaintiff articulates, the ALJ failed to build an accurate bridge from this evidence to the ALJ's conclusion that Plaintiff's subjective complaints of pain were not consistent with the record evidence.

The Commissioner argues that the ALJ properly considered the regulatory factors bearing on subjective symptom assessment, including activities of daily living as well as the location, duration, frequency, and intensity of Plaintiff's symptoms; aggravating factors; side effects of medication; and treatment other than medication. [Filing No. 17, at ECF p. 12-13.] Contrary to the Commissioner's assertion, the ALJ specifically equated Plaintiff's daily activities with her — ability to work. For instance, the ALJ stated that the opinion of consultative examiner Dr. Xavier Laurente, M.D., was "not persuasive" in part because Plaintiff's "level of activities of daily living reflect greater functionality." [Filing No. 14-2, at ECF p. 29.] Dr. Laurente opined that Plaintiff is able to stand/walk for at least two hours in an 8-hour workday and can lift/carry over 10 pounds occasionally and less than 10 pounds frequently. Yet the ALJ concluded, without further explanation beyond a reference to Plaintiff's levels of daily activities, that Dr. Laurente's opinion was not supported by his examination findings or consistent with the record as a whole and was therefore not persuasive.

As Plaintiff argues, it appears from the ALJ's decision that the ALJ relied heavily on Plaintiff's daily activities to find Plaintiff less limited than alleged, reject her complaints of pain, and reject the medical opinions, while ignoring the qualified way Plaintiff completed those activities.[2]

### C.      Plaintiff's RFC

Plaintiff also argues that the ALJ's determination of her RFC failed to properly account for all of Plaintiff's limitations and the ALJ's assessment of the medical opinions was improper. Plaintiff claims that the RFC assessed by the ALJ fails because it does not properly account for Plaintiff's need to be off task or absent from work; Plaintiff's fibromyalgia diagnosis and symptoms, or its impact; the "well-supported reaching, handling, and fingering restrictions necessary to accommodate Plaintiff's left shoulder, arm, and hand pain and neuropathy"; the difficulty Plaintiff has with stooping, kneeling, and bending due to knee and back pain; or Plaintiff's chronic neck pain and migraines, which she argues are exacerbated by prolonged standing, pulling, pushing, bending, lifting, stair climbing and daily activities. [Filing No. 18, at ECF p. 11.] Thus, Plaintiff argues that all these errors render the ALJ's ultimate finding—that Plaintiff was not disabled—unsupported.

Because the Court concludes that remand is proper on other grounds, it need not spend much time addressing remaining issues. However, the ALJ should take care to ensure on remand that the RFC is supported by substantial evidence and that proper consideration is given to all of Plaintiff's impairments in assessing her RFC. For instance, while the ALJ assessed that Plaintiff could do medium work involving lifting 50 pounds occasionally and 25 pounds frequently, as

---

[2] While Plaintiff raises many other arguments in relation to the ALJ's subjective symptom assessment, the Court need not discuss them further since it has already determined remand is proper.

Plaintiff points out, the ALJ's decision does not identify any medical evidence to substantiate the claim that Plaintiff had the ability to lift at these levels.  The ALJ found Plaintiff's daily activities to be consistent with the ability to work at this capacity, but provided no explanation for how those activities ("able to manage her personal care and hygiene, assist her husband with dressing, visiting her mother in the nursing home, perform some household chores and some shopping, drive, work in her flower beds, spend time with others on the phone or on the computer, and prepare simple meals") are consistent with or at all related to an ability to lift 25 to 50 pounds. [Filing No. 14-2, at ECF p. 26.]  In addition, the Commissioner did not address Plaintiff's arguments that the state agency medical opinions were critically outdated or incomplete.  These arguments warrant the ALJ's consideration on remand.

**IV.    Conclusion**

For the reasons noted above, Plaintiff's request for remand is granted.  [Filing No. 16.]

Date: 1/31/2022

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

14